UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES V. WOLLETT,

        Petitioner,              Case Number: 04-CV-60113

v.                                        HON. MARIANNE O. BATTANI

BRUCE CURTIS,

        Respondent.
_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Charles V. Wollett has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner, who is currently incarcerated at the Pugsley Correctional Factiliy in Kingsley, Michigan, alleges that he is unlawfully incarcerated after expiration of his maximum sentence.

**I.**

Petitioner pleaded guilty in Jackson County Circuit Court to first-degree criminal sexual conduct. On June 21, 1979, he was sentenced as a second habitual offender to thirty to sixty years imprisonment. In the pending petition, Petitioner challenges the amount of special good-time credits awarded to him.

In 2001, Petitioner filed a petition for a writ of habeas corpus in Chippewa County

Circuit Court[1] challenging the failure to award special good-time credits.  He presented the following claims:

> I. Petitioner's confinement violates his constitutional right to due process of law under the Fourteenth Amendment, and Const. 1963, Art. 1, § 17, where the Department of Corrections, on Respondent's authority, failed to release him on October 2, 2000, after serving his statutory maximum under M.C.L. § 750.520b, as imposed by the trial judge.  Petitioner was sentenced to prison for (30) to (60) years as a minimum and maximum in 1979, corrected to 1978, by the MDOC upon entry.
>
> II. Petitioner is illegally in custody where Respondent, the Deputy Director of MDOC, abused his authority by circumventing the release of Petitioner on October 2, 2000, after his maximum sentence expired with regular and special "good time" computation as it existed in 1978, under M.C.L. § 800.33(5).
>
> III. That the authority upon which Respondent relies to illegally confine Petitioner is constitutionally, and statutorily flawed creating a void in the statutes and the constitutional provisions under the due process clause of both state and federal constitutions, which prohibits an ex post facto law application to Petitioner's prisoner status dating back to 1978.  Petitioner's confinement violates the equal protection clause of both state and federal constitutions.
>
> IV. That the illegal confinement of Petitioner after serving his statutory maximum under M.C.L. § 750.520b, violates the Separation of Powers Doctrine where the Respondent, acting on behalf of the Executive Branch of Government, has usurped the powers of the Michigan Legislature under Michigan's Constitution.  The Legislature enacted M.C.L. § 800.33 to apply to prisoners good time awards.  Respondent's action is only authorized under this statute upon a restoration of forfeited regular or special "good time" which is not the case pursuant to M.C.L. § 800.33(10).
>
> V. The illegal detention of Petitioner by Respondent after he (Petitioner) has served his statutory maximum sentence imposed by

---

[1] The Ingham County Circuit Court, where the petition was originally filed, transferred the matter to the Chippewa County Circuit Court on August 9, 2001.

>the Judiciary, constitutes a Bill of Attainder thereby violating Const. 1963, Art. 3, § 2, and U.S. Const. Ar. 1, § 9, Clause 3; Art. 1, § 10, Clause I.

The trial court denied the petition. Wollett v. Bolden, No. 01-54749-AH (Chippewa County Circuit Court. Oct. 4, 2001).

Petitioner then filed a complaint for a writ of habeas corpus in the Michigan Court of Appeals, raising the following claims:

>I.  Defendant's interfering with Plaintiff's discharge date by circumventing the legislature's intent, and the statute, constitutes an ex post facto law application to Plaintiff's constitutional rights to due process, and creates a constitutional forbidden bill of attainder, violating the separation of powers doctrine requiring the writ of habeas corpus to issue to correct the violation.
>
>II. Whether or not defendant's reliance upon an administrative rule to over rule the statutory award of special good time granted by the warden, circumvented the good time statute and over ruled the Attorney General's opinion on this subject matter which was binding on the state agency and defendant.
>
>III. Defendant's action by rescinding the warden's grant of statutorily earned special good time under an in pari materia reading under M.C.L. § 800.33, with other statutes, supplants the legislature's intent, violating the separation of powers doctrine.

The Michigan Court of Appeals denied the complaint for writ of habeas corpus. Wollett v. Department of Corrections, No. 239862 (Mich. Ct. App. Feb. 26, 2003).

Petitioner, through counsel, filed an application for leave to appeal in the Michigan Supreme Court, presenting the following claim:

>The deputy director of the Department of Corrections does not have the statutory authority to overrule a warden's award of special good time credit nor to determine what amount of special good time credit that an inmate is awarded pursuant to M.C.L. 800.33.

3

The Michigan Supreme Court denied leave to appeal. Wollett v. Department of Corrections, No. 123644 (Mich. June 30, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

> I. Respondent's interfering with Petitioner's discharge date by circumventing the legislature's intent, and the statute, constitutes an ex post facto application to Petitioner's constitutional rights to due process, and creates a constitutional forbidden bill of attainder, violating the separation of powers doctrine requiring the writ of habeas corpus to issue to correct the violation.
>
> II. Respondent's deliberate indifference action in denying Petitioner's liberty interest in being released on time – in conformity with the sentence imposed, and the relevant statute M.C.L. 800.33(12), is a denial of due process that is subjecting Petitioner to cruel or unusual punishment in violation of the U.S. Eighth Amendment and Const. 1963, Art. 1, § 16, requiring the writ of habeas corpus to issue to correct the violation.
>
> III. Petitioner was denied due process and equal protection when respondent revoked 4,633 special good time days based upon a report prepared by prison administrator Caruso that did not comply with M.C.L. 800.33.
>
> IV. When Respondent did not rescind other prisoners – (good time committee recommended and warden awarded "special good time"), with similar records as Petitioner's pursuant to M.C.L. 800.33, but rescinded Petitioner's special good time, Petitioner was denied equal protection.

## II.

United States Code Title 28, Section 2241 provides, in relevant part, as follows:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdiction.
* * *
(c) The writ of habeas corpus shall not extend to a prisoner unless –
* * *
    (3) He is in custody in violation of the Constitution or laws or

      treaties of the United States . . .

28 U.S.C. § 2241.

### III.

Petitioner's claims that he is entitled to a writ of habeas corpus are based upon a dispute regarding the number of special good-time credits to which he is entitled. Petitioner maintains that he is entitled to 4,633 days of special good-time credit. The warden originally approved an award of 4,633 days of special good-time credit, but the deputy director of the Michigan Department of Corrections declined to approve that award. Petitioner, ultimately, was awarded zero days of special good-time credits.

### A.

The state argues that Petitioner's claims are unexhausted. A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." Levine v. Tornik, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See* Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990); Dombkowski v. Johnson, 488 F.2d 68, 70 (6th Cir. 1973).

Petitioner failed to present his claims for habeas corpus relief in the Michigan Supreme Court. Therefore, his claims are unexhausted. A federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also* Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court). For the reasons set forth below, the Court has concluded that Petitioner's claims do not warrant habeas corpus relief. Accordingly, in the interests of efficiency and justice, the Court will address Petitioner's claims rather than dismiss the petition on the ground of failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); Cain, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

**B.**

The Court briefly reviews the state statute and Michigan Department of Corrections policies and procedures regarding good-time and special good-time credits. Prior to December 30, 1982, a prisoner who had neither breached prison rules nor violated state law was entitled to receive good-time credit. Lowe v. Dept. of Corrections, 521 N.W.2d 336, 337 (Mich. Ct. App. 1994). These credits represent days that are subtracted from a prisoner's term of imprisonment. Id. at 336. In addition to these good-time credits, prisoners were also eligible to receive "special" good-time credits, not to exceed half of the amount of regular good-time credit. M.C.L. 800.33; Id. Generally,

6

these good-time credits reduced both minimum and maximum sentences. However, in 1978, Proposal B was approved by general election. Under Proposal B, effective December 12, 1978, certain offenders ("Proposal B offenders"), including those convicted of criminal sexual conduct, were ineligible to receive good-time or special good-time credit on their minimum terms. Id. at 337. But, they did continue to be eligible to receive good-time and special good-time credit on their maximum terms. Id.

Effective December 30, 1982, M.C.L. 800.33 was amended to create a new type of credit for Proposal B offenders. Proposal B offenders were now eligible for "disciplinary" credits and "special disciplinary" credits. Id. These disciplinary credits accrue at a slower rate than good-time credits. Id.

To assist in the accurate application of the statutory framework for awarding good-time and disciplinary credits, the Department of Corrections adopted Policy Directive PD-DWA-35.05, effective April 1, 1987, which provides, in relevant part:

> Disciplinary credits are earned as follows:
>
> 1) When serving for a Proposal B crime committed on or after January 1, 1983 prisoners earn disciplinary credit on both their minimum and maximum sentence.
>
> 2) When serving for a Proposal B crime committed on or after December 10, 1978 but prior to January 1, 1983 prisoners earn disciplinary credit on their minimum sentence beginning January 1, 1983, but earn special and regular good time on their maximum sentence beginning from the date the sentence is effective.

Id. at 338.

M.C.L. 800.33(12) provides for the granting of special good-time credits as

follows:

> The warden of an institution may grant special good time allowances to eligible prisoners who are convicted of a crime that is committed before April 1, 1987. Special good time credit shall not exceed 50% of the good time allowances under the schedule in subsection (2).

M.C.L. 800.33(12).

An offender who committed a crime between December 10, 1978 and January 1, 1983, is eligible to earn disciplinary credit on his minimum term beginning January 1, 1983 and special and regular good-time credits on his maximum term dating back to the date of sentencing. Lowe, 206 Mich App. at 133-34. Thus, a prisoner who is earning the more favorable good-time and special good-time credits on his maximum term and the less quickly accumulated disciplinary credits on his minimum sentence may complete his maximum term before having served the minimum sentence. Such prisoners are released without supervision.

## C.

In this case, Petitioner falls into the group of offenders eligible to earn good-time and special good-time credits on his maximum term. Petitioner argues that he should have been awarded 4,633 days of special good-time credit, which would have reduced his maximum release date to October 2, 2000. The good-time committee recommended that Petitioner receive 4,633 days credit and the warden concurred with that recommendation. Wollett v. Bolden, No. 01-5749-AH, slip op. at 2-3. However, the Deputy Director of Corrections Facilities, Dan Bolden, did not approve that award and directed that

8

Petitioner be awarded zero days special good-time credit. Id. Petitioner argues that this violated the *Ex Post Facto* Clause, M.C.L. 800.33, his right to due process, the prohibition against bills of attainder, separation of powers, the Eighth Amendment's ban on cruel and unusual punishment, and the Equal Protection Clause.

### 1.

Petitioner first claims that the director's action in declining to award special good-time credits was improper because, according to Petitioner, under the 1986 amendment to M.C.L. 800.33, a deputy director is not authorized to award special good-time credit.

Prior to 1986, the statute authorized a warden to award special good time credit "'with the consent and approval of the director of the department of Corrections.'" Edmond v. Department of Corrections, 254 Mich. App. 154, 156 (Mich. Ct. App. 2003), quoting 1982 P.A. 442. The 1986 amendment removed the reference to the director. Id., citing 1986 P.A. 322. The Michigan Court of Appeals has held that the 1986 amendment did not divest the deputy director of the power and authority to overrule a warden's decision that special good-time credits should be awarded. Id. at 157-58. The Michigan Court of Appeals reached this conclusion by reading 800.33 in conjunction with other statutes. Mich. Comp. Laws § 791.203 gives the director of the Department of Corrections "'full power and authority to supervise and control the affair of the department . . .' [and] M.C.L. § 791.205 authorizes the director to appoint assistant directors to 'exercise and perform the respective powers and duties prescribed and conferred by this act . . .'" Id. The state court reasoned that § 800.33(12) was not an

"exception to the general grant of power and authority provided the director and assistant directors under M.C.L. § 791.203 and M.C.L. § 791.205." Id. at 157. The state court held that "[i]n the absence of statutory language that explicitly limits the full power and authority granted by M.C.L. § 791.203, we will not read that limitation into the statute." Id.

"The interpretation of state statutes and legislative intent by state appellate courts is a matter of state law which is not reviewable in habeas corpus." Hack v. Elo, 38 Fed. Appx. 189, 194 (6th Cir. 2002). Therefore, Petitioner's claim that the state has improperly interpreted M.C.L. §800.33(12) to allow the deputy director to retain authority over the award of special good-time credits is not cognizable on habeas review.

**2.**

Petitioner argues that the decision not to award him special good-time credits was a violation of his right to due process. "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." Sandin v. Conner, 515 U.S. 472, 480 (1995) (internal quotation omitted). The United States Supreme Court has recognized that a state may create a liberty interest in good-time credit. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such a manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

The Sixth Circuit Court of Appeals has not yet addressed the question whether the Michigan statute governing the award of special good-time credits creates a protected liberty interest in special good-time credits. Other courts have declined to find that prisoners have a protected liberty interest in good-time credits awarded on a discretionary basis. See Cook v. Wiley, 208 F.3d 1314, 1322 (11th Cir. 2000) ("[I]f the relevant statute places no substantive limitations on official discretion in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated.") (internal quotation omitted); Abed v. Armstrong, 209 F.3d 63, 66-67 (2nd Cir. 2000), *cert. denied* 121 S. Ct. 229 (Oct. 2, 2000) (holding that although prisoners have a liberty interest in good-time credit already earned, no such interest has been recognized in the opportunity to earn good-time credit).

The statutory framework for awarding special good-time credits in Michigan provided such credits to be awarded at the discretion of the warden for behavior that is in some way exemplary. This is in contrast to regular good-time credits which are awarded automatically for months during which a prisoner has not violated prison or state rules. Based on this distinction between the revocation of credits already awarded and the decision not to award credits that are awarded only at the discretion of the warden under limited circumstances, this Court holds that there is no liberty interest in special good-time credits.

**3.**

Petitioner claims that the decision not to award him special good-time credits was

a violation of the *Ex Post Facto* Clause of the United States Constitution. The *Ex Post Facto* Clause forbids the Government from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (internal quotation omitted). The purposes of the clause are to provide fair warning about new punishments and to discourage arbitrary and oppressive legislation. Id. at 28. "To fall within the *ex post facto* prohibition, two elements must be present: (1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." United States v. Reese, 71 F.3d 582, 585 (6th Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996). The United States Supreme Court further explained the proper standard for determining whether an offender is disadvantaged by a law:

> [T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor . . . on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

California Dept. of Corrections v. Morales, 514 U.S. 499, n.3 (citation omitted).

As discussed above, Petitioner has failed to show that special good-time credit was ever mandatory under Michigan law. The statutory requirement for special good-time credit in effect at the time of Petitioner's conviction stated, in pertinent part:

> [T]he warden of any institution subject to the provisions of this act ***may***, with the consent and approval of the commissioner of corrections, extend the good time allowance beyond that herein specific, to persons whom he deems to have achieved a decided reformation since the date of

commitment or for good work records or for exemplary conduct.

Id. at 5, quoting M.C.L. 800.33 (emphasis supplied by Michigan Court of Appeals). Petitioner has failed to show that special good-time credit was ever awarded other than by the discretion of the warden. Thus, he has not shown any change in the law governing special good-time credits by which he was disadvantaged. Accordingly, no violation of the *Ex Post Facto* clause occurred.

**4.**

Petitioner also claims that the failure to award him special good-time credit violates his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." Id. at 995. The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'." United States v. Organek, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also* United States v. Williams, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that, generally, a sentence within statutory limitations does not violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted). Under Michigan law, the maximum sentence for first-degree criminal sexual conduct is life imprisonment. Mich. Comp. Laws § 750.520b. Petitioner's sentence did not exceed the Michigan statutory maximum. Therefore, the decision not to grant Petitioner special

13

good-time credits which would have shortened his sentence did not constitute cruel and unusual punishment.

**5.**

In addition, Petitioner's claim that the decision not to grant him special good-time credits violated his rights under the Equal Protection Clause of the Constitution is meritless. An equal protection claim under the Fourteenth Amendment requires a state actor's intentional discrimination because of a person's membership in a protected class. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Petitioner does not allege that he is a member of a protected class or that the deputy director's actions were based upon that membership. Therefore, this claim will be denied.

**6.**

Petitioner next claims that the decision not to grant special good-time credits constituted a bill of attainder. "A bill of attainder is a legislative act which inflicts punishment without judicial trial." United States v. Lovett, 328 U.S. 303, 315-16 (1946). Because the rules governing the award of special good-times credits apply only to persons who already have been convicted and sentenced following a judicial trial, they cannot be classified as a bill of attainder. Schafer v. Moore, 46 F.3d 43, 45 (8th Cir. 1995); *see also* Stanko v. Story, 1991 WL 142630, * 1 (6th Cir. 1991).

**7.**

Finally, Petitioner claims that the decision not to award him special good-time credits violates the doctrine of separation of powers. "[T]he concept of separation of

powers embodied in the United States Constitution is not mandatory in state governments." <u>Sweezy v. New Hampshire</u>, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957).  Therefore, this claim is not cognizable on federal habeas review. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991), *quoting* <u>Louis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus review does not lie for errors of state law").

## IV.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: <u>February 28, 2006</u>